IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JEFFERY HAMPTON, #575297,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:24-cv-01480 |
| | ) Judge Trauger |
| **VINCENT VANTIEL, Warden, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffery Hampton, a state inmate proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983 concerning the conditions of his confinement at the Trousdale Turner Correctional Center (TTCC). (Doc. No. 1.) The plaintiff also filed an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2) and a letter/motion requesting to ascertain the status of this case. (Doc. No. 6.)

The case is before the court for ruling on the plaintiff's IFP application and motion and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. APPLICATION TO PROCEED IFP

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because the plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to prepay the entire filing fee, that IFP application (Doc. No. 2) is **GRANTED**.

Regardless of their indigency, prisoners are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. *Id.* § 1915(b)(1)–(2).

Accordingly, the plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

A. <u>Legal Standard</u>

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2)

that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. Allegations of the Complaint

The first five pages of the Complaint consist of a pleading form that identifies five defendants and asks for damages to be awarded (including $75,000 for each of three types of harm—"mental anguish," "emotional," and "physical"—plus $1.5 million to compensate for "civil rights violations"). (Doc. No. 1 at 4.) The remaining thirty pages consist of a "Cause of Action/Statement of the Facts" (*id.* at 6–36) that names nine additional defendants.[1] The plaintiff has also attached 28 pages of grievance documents and medical records. (Doc. No. 1-1.) The claims of the fifteen-count Complaint concern (1) the atmosphere of violence at TTCC due to its intentional understaffing, as well as its housing of inmates with different security classifications together, without regard to inmate safety (Counts One and Two); (2) the deliberate withholding of necessary medical care based on its cost (Counts Three through Eight, Ten)[2]; and (3) the deprivation of religious liberties (Counts Eleven through Fifteen). These claims assert violations of the plaintiff's First, Eighth, and Fourteenth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Despite its length, the Complaint alleges relatively few facts in support of its claims. With respect to the claim of deliberate indifference to safety, the Complaint alleges that, on June 12,

---

[1] This pleading was apparently adapted from a prior filing by a different inmate. It asserts the propriety of venue in this District because the action is based on events that occurred here, specifically in the "Davidson Co./Metro Courthouse Car Port." (Doc. No. 1 at 6.) It also purports to assert a failure-to-protect claim against "CoreCivic Transportation Dept." and other defendants ("City and County," "Thomas") (*id.* at 13) not elsewhere identified as such in this case—which does not involve transportation or any events occurring in the Metro Courthouse carport.

[2] Count Nine of the Complaint asserts that the constitutional violations claimed in its other counts also constitute negligence under state law.

4

Case 3:24-cv-01480   Document 7   Filed 02/11/26   Page 4 of 14 PageID #: 96

2024, Officer Eddington "left Fox Charlie pod door open" and allowed other inmates from other pods to enter Fox Charlie pod where the plaintiff resides, exposing him to a risk of harm and causing "severe mental anguish." (Doc. No. 1 at 7–8, 13.) It alleges that CoreCivic, the for-profit prison management company that operates TTCC, deliberately understaffs the prison to enhance its profit margin (*id.* at 10–11), and that CoreCivic, TTCC Warden Vanteil, and the Tennessee Department of Correction (TDOC) have failed "to properly supervise, train and/or control correctional officers" (*id.* at 12–13), allowing for conditions that cause the plaintiff "to suffer mental anguish and emotional distress." (*Id.* at 14.)

Regarding medical care, the Complaint alleges that the plaintiff's appointment with an orthopedic surgeon "for a shoulder and left hip, knee and heel MRI" was scheduled but never happened. (*Id.* at 15.) It further alleges that defendant Joshua Dragan, FNP-C, "failed to provide adequate medical assistance and/or schedule an appointment" on June 29 and July 3, 2024. (*Id.*) The plaintiff allegedly suffers from obvious physical limitations and symptoms, yet he has not seen a specialist because TDOC and Warden Vanteil do not follow the "medical policy" of making decisions based on professional medical judgment but decide what they will approve based on associated costs. (*Id.* at 16.) This concern with costs has also led to the understaffing of TTCC's medical unit. (*Id.* at 17–18.)

On August 25, 2024, the plaintiff was denied assignment to a bottom bunk in the bottom housing tier, despite having an order from the medical unit that direced his assignment to a bottom bunk on the bottom tier. (*Id.* at 18, 23.) As a result, the plaintiff experienced "pain and suffering trying to jump from top to bottom entering and getting out of his assigned bed area." (*Id.* at 23.)

Regarding the plaintiff's religious practice, the Complaint alleges that his rights were violated when, on May 11, 2024 at 11:30 a.m., he was denied "the right to participate in

Communion" despite the fact that this religious service did not pose any security risk or other concern to the maintenance of order and discipline. (*Id.* at 25–28.)

C. Analysis

1. Failure to protect/deliberate indifference to safety (Counts One and Two)

These counts of the Complaint are prefaced by the plaintiff's general allegations that TTCC is deliberately understaffed and therefore beset by "unsafe conditions" that result in "routine beatings, stabbings, deaths, and life-threatening danger." (Doc. No. 1 at 10.) The Complaint then claims that TDOC and its Commissioner (who is misidentified as Commissioner Swader, rather than Commissioner Frank Strada), as well as TTCC Warden Vanteil, failed to train and to supervise the TTCC staff, resulting in Defendant Eddington leaving the pod door open and allowing non-resident inmates to enter, "placing this plaintiff in a[n] unsafe situation." (*Id.* at 12–13.) These defendants allegedly knew that there was potential for violence when outside inmates are allowed into other pods but failed to take any significant measure to secure the pod against such potential violence, and therefore violated the plaintiff's Eighth Amendment rights, causing him to suffer "mental anguish and emotional distress." (*Id.* at 14.)

An inmate who "has suffered or is threatened with suffering actual harm" as a result of violent conditions of confinement may plausibly claim a violation of the Eighth Amendment's prohibition against cruel and unusual punishments, *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998), upon "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that the defendant prison officials had reason to know of the risk yet failed to respond reasonably to address it. *Farmer v. Brennan*, 511 U.S. 825, 842–45 (1994) (internal quotation marks omitted).

6

The Complaint in this case does not allege that Plaintiff has been the victim of any attack or that he has suffered any physical injury related to prison violence. The Complaint instead asserts that Plaintiff has suffered "mental anguish and emotional distress" due to living in fear of such an attack, particularly in the wake of Officer Eddington's allowance for outside inmates to enter the plaintiff's pod. (Doc. No. 1 at 13–14.) Assuming for purposes of initial review that such mental anguish and emotional distress are sufficient to constitute an injury-in-fact that confers standing to sue, *see Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) (recognizing that injury-in-fact may be established by "emotional distresses . . . accompanied by corroborating allegations that established more than bare anxiety" about future harm), and that an appropriate injunctive remedy might be claimed, the damages actually claimed in the Complaint (*see* Doc. No. 1 at 4, 34–35) are not awardable. A "claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities' that is the touchstone of a conditions-of-confinement case" for monetary compensation. *Wilson*, 148 F.3d at 601 (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). "[I]t is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.*; *see also Seabrooks v. Core Civic*, No. 3:17-1328, 2019 WL 1015093, at *4 (M.D. Tenn. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1359492 (M.D. Tenn. Mar. 26, 2019) ("The holding in *Wilson* requires dismissal of Plaintiff's Eighth Amendment failure to protect claim given Plaintiff's lack of allegations that he suffered an actual physical injury caused by Defendants' alleged deliberate indifference to his safety.").

Also, Plaintiff is prevented by statute from pursuing damages for injuries to his mental or emotional health in the absence of a physical injury. The PLRA does not allow a claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the

commission of a sexual act [involving physical contact]." 42 U.S.C. § 1997e(e). Because Plaintiff seeks to recover strictly for mental or emotional injuries produced by the violent conditions of his confinement, without alleging that the defendants' failure to protect him or to act to preserve his safety resulted in any physical injury,[3] Section 1997e(e) bars his claim for damages. *See Wallace v. Holloway*, No. 16-2390-STA-EGB, 2017 WL 4001569, at *7 (W.D. Tenn. Sept. 11, 2017) (holding that § 1997e(e) barred inmate's failure-to-protect claim based on "emotional anxiety and fear for his safety" from being housed with violent gang members whom he had fought on two occasions without suffering any physical injuries); *Jackson v. Smith*, No. 1:05-CV-834, 2006 WL 118284, at *4 (W.D. Mich. Jan. 13, 2006) (holding that § 1997e(e) barred inmate's claim of mental anguish based on fear of retaliation by prison guard, which provoked anxiety attack requiring medical attention, inasmuch as "[t]he Sixth Circuit has repeatedly held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury") (citing cases).

For these reasons, the plaintiff's Eighth Amendment claims related to the violent conditions of his confinement will be dismissed.

2. <u>Deliberate indifference to medical needs (Counts Three through Eight, Ten)</u>

Though divided into seven counts, the Complaint's discussion of the medical care provided to the plaintiff distills to three essential claims. First, it claims that he received constitutionally inadequate medical care at TTCC because an appointment with a specialist was scheduled but never took place and other appointments were requested by the plaintiff but not made, despite his obvious need for treatment. Second, it claims that cost, not medical need, is what drives decisions

---

[3] According to the Sixth Circuit, in the absence of a physical injury related to the condition claimed to be emotionally harmful, a prisoner's "Eighth Amendment claim is not cognizable under § 1997e(e)." *Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010). An allegation that the plaintiff suffered a physical injury that is unrelated to the claim under review will not suffice. *Id.*

about the care TTCC inmates receive, and that cost concerns also cause TTCC to be understaffed with medical providers. Third, it claims that the plaintiff was denied assignment to a bottom bunk in the bottom housing tier on August 25, 2024, despite having an order from the medical unit that required his assignment to a bottom bunk on the bottom tier.

The Eighth Amendment is the source of convicted prisoners' constitutional claims regarding medical care. A claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has two components, one objective and one subjective. The objective component requires that the plaintiff's health condition(s) present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If a sufficiently serious medical need exists, the subjective component requires that the defendants understood yet consciously disregarded that need. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

The Complaint fails to support a plausible claim that the plaintiff's constitutional right to adequate medical care was violated at TTCC, because it establishes that his need for medical treatment was not disregarded. The documents attached to the Complaint[4] show that the plaintiff

---

[4] The court may consider materials attached to the Complaint in performing the initial screening required by the PLRA. *See Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2–3 (6th Cir. May 23, 2018) (reviewing documents attached to complaint in performing PLRA screening) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that a district court evaluating whether a complaint fails to state a claim may consider "any exhibits attached" to the complaint)).

requested a follow up after a "recent visit to outside orthopedist" on April 30, 2024; that an eye appointment was in the process of being scheduled as of June 29, 2024; and that the plaintiff's right shoulder, left foot, and his hip, knee, and leg area were to be examined or scheduled for imaging shortly thereafter. (Doc. No. 1-1 at 6.) He had an x-ray of his left foot on July 2, 2024, which was negative for bone spurs or other abnormalities. (*Id.* at 7.) This x-ray report also shows that he had been prescribed Naproxen for the pain in his foot, that further treatment was to be discussed, and that an MRI of the plaintiff's right shoulder was in the process of being scheduled. (*Id.*) An office note from Samuel Moore, FNP-C, on November 2, 2024 states that the plaintiff was seen by a physician, Dr. Neff, who (presumably based on the results of the shoulder MRI) recommended referral to orthopedic surgery for total right shoulder replacement, with follow up in the meantime at the plaintiff's "next scheduled chronic care visit." (*Id.* at 20.)

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," unless "the medical attention rendered [is] so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Despite his dissatisfaction with the TTCC medical staff's failure to make or honor particular appointments, or the alleged profit motives that governed their staffing levels or provision of treatment, the plaintiff has received a degree of medical care that is clearly not "woefully inadequate" or suggestive of a total lack of concern for his condition. His preference for a different course of treatment is irrelevant to the analysis of whether his constitutional rights were violated. *See Rhinehart*, 894 F.3d at 740 ("An inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim.") (citations

and internal quotation marks omitted). At best, the plaintiff's allegations support—and Count 9 of the Complaint (Doc. No. 1 at 24) explicitly asserts—a claim of negligence that is not cognizable under Section 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under § 1983.).

As far as the bunk assignment issue, the Complaint incorporates the attached documents by reference (Doc. No. 1 at 18) but itself alleges only (1) that the defendants "act[ed] with deliberate indifference on August 25, 2024" when they deprived the plaintiff of a bottom bunk assignment (*id.*), and (2) that being on a top bunk activated his pain and "suffering from ailment now discovered per nurses, that plaintiff believes is causing the other foreseeable issues." (*Id.* at 23.) The documents attached to the Complaint show that the plaintiff complained about not receiving a bottom bunk when assignments were made on August 22, 2024, after three bottom bunks that had become available in his pod were given to younger, healthier inmates who did not have a medical order for that accommodation as the plaintiff did. (*Id.* at 1–2, 4.) The plaintiff's "Health Classification Summary," dated February 27, 2024, is a form that delineates between "Restrictions" and "Accommodations." (Doc. No. 1-1 at 4.) Notably, the plaintiff was not classified with the relevant medical "restriction"—which is described on the form as an "[a]cute need to be housed on first floor/bottom bunk"—but with the "accommodation" of such housing "due to orthopedic disorders, but no reported limitations due to disorders by [inmate]," aside from "chronic pain." (*Id.*)

The plaintiff—who had a top bunk assignment at the time of the events described in the Complaint, despite his prior accommodation order—first made the assigning official aware of his accommodation order "at 6:15 pm [on] Aug. 22, 2024," the day of the bunk assignments at issue.

11

(*Id.* at 1.) On August 23, he made other officials aware that he had been passed over for reassignment to a bottom bunk. (*Id.* at 2.) On August 27, two days after the date of the plaintiff's formal grievance, the official response indicated that he would "be given preference" when the next lower bunk became available. (*Id.* at 3.) At some point prior to September 20, 2024, the plaintiff was apparently reassigned to CA pod (*see id.* at 10), though it is unknown whether he received a top or bottom bunk.

These allegations do not support a reasonable inference that the assignment of other inmates to bottom bunks on August 22, 2024, while leaving the plaintiff in a top bunk, was done with conscious disregard for the plaintiff's serious medical needs. *See Rhinehart*, 894 F.3d at 738. Even viewed in the light most favorable to the plaintiff, the facts discernible from the Complaint and its attachments are insufficient to establish that the assigning official knew of the plaintiff's medical need prior to assigning the few available bottom bunks in his pod, or that the plaintiff's subsequent grievance was ignored. The plaintiff thus has not shown that any defendant consciously disregarded a serious medical need for him to be assigned a bottom bunk in a bottom tier cell.

Because the plaintiff has failed to plausibly claim a constitutional violation related to his medical care, these Eighth Amendment claims will be dismissed.

3. Religious exercise (Counts Eleven through Fifteen)

The Complaint asserts claims under the First Amendment and RLUIPA based on a single occurrence on May 11, 2024, when the plaintiff was denied the right to participate in a Communion service. But it is only "substantial burdens" on religious practice that are prohibited by the First Amendment and RLUIPA. *See Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458, 460–61 (6th Cir. 2019). "[T]he denial of a religious practice on a single, isolated occasion does not constitute a 'substantial burden' and thus does not violate the First Amendment" or RLUIPA. *Torres*

12

*Arboleda v. O'Banion*, No. 2:17-CV-0442-EFB P, 2019 WL 1206826, at *2 (E.D. Cal. Mar. 14, 2019); *see also*, *e.g.*, *Gunn v. Kentucky D.O.C.*, No. 5:07CV-P103-R, 2010 WL 2555756, at *4–5 (W.D. Ky. June 18, 2010) (finding that inmate's inability to attend one chapel service did not substantially burden his rights under the First Amendment or RLUIPA); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) ("[M]issing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.") (citation omitted). Accordingly, the Complaint fails to state a plausible claim for deprivation of religious liberties.

In sum, the Complaint does not plead any viable federal claims and will therefore be dismissed. To the extent that it presents claims under Tennessee law,[5] the court declines to retain jurisdiction over them, and they will be dismissed without prejudice. *See Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020) (if all federal claims are dismissed before trial, "the state claims generally should be dismissed as well") (citation omitted).

### III. CONCLUSION

In light of the discussion above, the plaintiff's request for the status of this case (Doc. No. 6) is **GRANTED**.

This action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Any state law claims are dismissed without prejudice to the plaintiff's ability to pursue them in state court.

The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

---

[5] While Counts Eight and Nine of the Complaint are described parenthetically as "Negligent Infliction of Emotional Distress" and "Negligence . . . [under] Tennessee Common Law," respectively (Doc. No. 1 at 22–24), those counts simultaneously claim relief under the U.S. Constitution. Count Eight bizarrely refers to the plaintiff's "fundamental right to post-incarceration procreation" (*id.* at 22), though no other factual or legal support for such a claim is found in the Complaint.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

14

Case 3:24-cv-01480 Document 7 Filed 02/11/26 Page 14 of 14 PageID #: 106